UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUAN OROPEZA and JORGE LOPEZ, on behalf of themselves and other persons similarly situated, known and unknown,<br>　　　Plaintiffs,<br><br>v.<br><br>APPLEILLINOIS, LLC, d/b/a APPLEBEE'S NEIGHBORHOOD GRILL & BAR, *et al.*,<br>　　　Defendants. | Case No. 06 C 7097<br><br>Magistrate Judge Geraldine Soat Brown |

## MEMORANDUM OPINION AND ORDER

Before the court are three motions concerning the scope and design of discovery in this collective action under the Fair Labor Standards Act. In their motions, defendants AppleIllinois, LLC, W. Curtis Smith, James Borke, Archie Iodice and Jerry Kreger (collectively, "AppleIllinois") seek the dismissal, first, of 14 opt-in plaintiffs, and then, an additional 12 opt-in plaintiffs.[1] AppleIllinois also seeks an order compelling the deposition of an additional opt-in plaintiff when she is released from military duty. (Defs.' Dismissal Mem. at 1 n. 1.) Plaintiffs seek a protective order barring AppleIllinois from "unilateral[ly] noticing of depositions intended solely to 'weed out' opt-

---

[1] The parties' submissions are cited as: Defendants' Motion to Dismiss Fourteen Opt-in Plaintiffs: "Defs.' Dismissal Mot." [dkt 203], and defendants' supporting memorandum: "Defs.' Dismissal Mem." [dkt 204]; Plaintiffs' Response in Opposition: "Pls.' Resp." [dkt 215]; Defendants' Reply Memorandum in Support: "Defs.' Reply"; [dkt 218]; Defendants' Motion to Dismiss Twelve Additional Opt-in Plaintiffs: "Defs.' Add'l Dismissal Mot." [dkt 225], and defendants' supporting memorandum: "Defs.' Add'l Dismissal Mem." [dkt 226]; Plaintiffs' Motion for a Protective Order From Defendant AppleIllinois, LLC's Notices of Deposition: "Pls.' Mot." [dkt 231]; and Defendants' Opposition to Plaintiffs' Motion for a Protective Order From Defendant AppleIllinois, LLC's Notices of Deposition: "Defs.' Opp'n" [dkt 235].

in Plaintiffs from this litigation," and directing AppleIllinois to work collaboratively with plaintiffs in obtaining deposition testimony. (Pls.' Mot. at 6, 9.) For the reasons stated below, AppleIllinois' motions to dismiss are granted in part and denied in part, and plaintiffs' motion is granted in part and denied in part.

**BACKGROUND**

The history of this case is recounted in some detail because events occurring well before the current motions are relevant to their disposition.

In late 2006, plaintiffs filed this case alleging claims under the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105/1 *et seq.*, the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.*, and the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*[2] Plaintiffs allege that they are or were employees of AppleIllinois at approximately 30 Applebee's restaurants in Illinois and that AppleIllinois has not paid them statutorily required overtime pay. (Third Am. Compl. ¶¶ 28-32.) In August 2007, the court approved the parties' agreed motion to send notice of the collective action to similarly situated persons pursuant to 29 U.S.C. § 216(b). [Dkt. 28.] Notice was sent to all hourly kitchen workers employed at Illinois Applebee's restaurants between August 2, 2004 and the notice date. (Agreed Mot. to Approve Notice, Ex. A.) [Dkt 26.] It informed the employees that if they had worked more than 40 hours in an individual workweek without receiving overtime wages they could opt in to the litigation to pursue unpaid wages. (*Id*. at 1-2) It also advised that the named plaintiffs, Juan Oropeza and Jorge Lopez, would be designated as agents for

---

[2] Although plaintiffs subsequently amended their complaint a number of times, their FLSA claim has remained essentially the same throughout the litigation. (*Compare* Compl. [dkt 1] *with* Third Am. Compl. [dkt 134].)

the opt-in class, empowered to make decisions on behalf of the opt-in plaintiffs. (*Id*. at 3.) It noted, however, that opt-in plaintiffs might "be required to respond to written questions, provide documents in [their] possession or control, participate in depositions, testify in court, or any combination of these things." (*Id*. at 2.) Most of the consent forms to opt in were filed in the fall of 2007, and there are currently more than 100 plaintiffs in the opt-in class. [*E.g.*, dkt 29-39.][3]

The parties consented to the jurisdiction of the magistrate judge in January 2008. [Dkt 86.] At that time, the parties were exploring the possibility of settling this case as well as a parallel but separate case, *Driver v. AppleIllinois LLC, et al.*, No. 06 C 6149 (N.D. Ill.), and later engaged a mediator to assist them.[4] At the parties' request, the previously set discovery deadlines were vacated so that the parties could focus on the possibility of settlement. [Dkt 93.] AppleIllinois provided certain documents to plaintiffs, but the parties delayed formal discovery while they focused on settlement efforts. The mediation in December 2008 was unsuccessful.[5] After almost a year spent focused on settlement negotiation, the parties resumed the litigation, and AppleIllinois replaced its counsel. Discovery began in full force.

In 2009, nearly three years into the litigation, AppleIllinois served a document request on all of the opt-in plaintiffs, and deposition notices on 20 of them. (Pls.' Mot. at 2; Pls.' Mot. Prot. Order from Doc. Reqs., Ex. A [dkt 189].) Plaintiffs moved for a protective order, asking that the parties be ordered to confer and mutually develop a representative discovery plan. (Pls.' Mot. Prot. Order

---

[3] More than 150 people opted into the litigation, but some of those claims have been dismissed or withdrawn for various reasons. (*See, e.g.*, Stip. to Dismiss, Ex. A.) [Dkt 219.]

[4] *See* Pls.' Mot. for Sanctions ¶ 10 filed in *Driver*, No. 06 C 6149 (N.D. Ill.). [Dkt 91.]

[5] *See* Pls.' Mot. for Sanctions ¶¶ 12-15 filed in *Driver*, No. 06 C 6149 (N.D. Ill.).

3

from Doc. Reqs. at 9.) Plaintiffs argued that it would be overly burdensome to require responses from all of the opt-in plaintiffs as opposed to a representative sampling of them since this is a collective action. (*Id.* at 5-7.) AppleIllinois opposed the motion, arguing that it needed discovery from all of the opt-in plaintiffs and noting that numerous other courts have allowed such individualized discovery in FLSA collective actions. (Def.'s Resp. to Pls.' Mot. Prot. Order from Doc. Reqs.) [Dkt 191.]

After a hearing on plaintiffs' motion, the court ordered that, as a starting point, AppleIllinois' document request be answered by only the 20 opt-in plaintiffs whose depositions had already been noticed by AppleIllinois. (Order, Sept. 16, 2009.) [Dkt 192.] No ruling was made expressly limiting discovery to those opt-in plaintiffs; rather, responses by the other opt-in plaintiffs were stayed. (*Id.*)

By a status conference on November 5, 2009, however, only four opt-in plaintiffs had appeared for their depositions. (Defs.' Dismissal Mem. at 3 n. 4.) One of the noticed 20 had advised plaintiffs' counsel that she intended to opt-out of the litigation, and none of the others were scheduled to be deposed. AppleIllinois orally moved that the remaining 15 depositions be compelled. Plaintiffs opposed that, saying that they had been unable to locate some of the opt-in plaintiffs due to the passage of time. AppleIllinois' motion was granted. The 15 opt-in plaintiffs whose depositions were previously noticed were ordered to confirm a date for their depositions, which were to take place by January 18, 2010. (Order, Nov. 5, 2009.) [Dkt 199.]

When none of those 15 depositions took place, AppleIllinois brought the present motion to dismiss 14 of the opt-in plaintiffs who had failed to appear. (Defs.' Dismissal Mem. at 1 n. 1, 6.) AppleIllinois invokes both Fed. R. Civ. P. 37 and 41, arguing that those opt-in plaintiffs who failed

4

to respond to the discovery requests and failed to appear for their depositions should be dismissed from the case with prejudice. (*Id*. at 6-7.)[6] Because the fifteenth missing deponent, Brooke Engberg, was apparently unavailable due to her military service, AppleIllinois does not seek to dismiss her claim but rather requests a deadline after her active duty by which her deposition would proceed. (*Id*. at 1 n. 1.) Plaintiffs oppose the dismissal motion, arguing that discovery should proceed in a collective action on a representative basis, and that because AppleIllinois has refused to work with plaintiffs in selecting which plaintiffs to depose, dismissal is too harsh a remedy for the opt-in plaintiffs who failed to appear.

AppleIllinois then issued deposition notices for an additional 14 opt-in plaintiffs. The parties encountered similar difficulties in finding those plaintiffs and scheduling those depositions. Deadlines were set for the depositions to be scheduled and take place. (Order, Feb. 4, 2010.) [Dkt 217.] By the time the deadlines had passed, however, only two more opt-in plaintiffs had been deposed. (Defs.' Add'l Dismissal Mem. at 4 n. 5.) While its first motion to dismiss was pending, AppleIllinois filed a second motion to dismiss, seeking the dismissal of the 12 additional opt-in plaintiffs who had failed to appear for their depositions. AppleIllinois raises the same arguments in support of its second motion to dismiss as it did in the first, and plaintiffs similarly oppose the motion.

While both dismissal motions were pending, AppleIllinois issued a third round of deposition notices, this time seeking the depositions of an additional 12 opt-in plaintiffs. (Pls.' Mot., Ex. A.) Plaintiffs responded by seeking a protective order limiting discovery to what is "reasonable and

---

[6] AppleIllinois notes, however, that three of the 14 opt-in plaintiffs who are the subject of its first motion to dismiss have provided responses to written discovery requests but have not appeared for their depositions. (*See* Defs.' Dismissal Mem. at 2 n. 2.)

representative," and an order that the parties "determine a collaborative methodology that will allow Defendants to obtain the remaining deposition testimony that they seek." (*Id*. at 9.) AppleIllinois opposes the motion, stating that it is entitled to more than the six depositions it has been able to take from the class of 124 opt-in plaintiffs, and arguing that AppleIllinois is entitled to select whom it wishes to depose. (Defs.' Opp'n at 2-3, 4.)

## DISCUSSION

The parties frame the issue on the motions as whether there should be "individualized" or "representative" discovery from the opt-in plaintiffs in this FLSA case. It is important to understand what "representative" discovery means in this context.

The FLSA allows employees to bring a collective action on behalf of themselves and "other employees similarly situated." 29 U.S.C. § 216(b). A collective action serves the dual function of avoiding a multiplicity of duplicate actions while allowing plaintiffs the advantage of lower individual costs by pooling resources to vindicate rights. *See, e.g., Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (discussing collective actions under the ADEA, 29 U.S.C. § 626(b), which incorporates the procedure of 29 U.S.C. § 216(b)).

Courts have different views on whether each opt-in plaintiff in a collective action should be subject to the full range of discovery or whether discovery in collective actions should be treated more like discovery in Rule 23 class actions. *See, e.g., Smith v. Lowe's Home Ctrs., Inc.*, 236 F.R.D. 354, 357 (S.D. Ohio 2006) (collecting cases and noting differences in approach).

An FLSA collective action, however, is significantly different from a class action under Fed. R. Civ. P. 23. Before a Rule 23 class action is certified, the court must undertake a multi-pronged

analysis, including determining that the claims of the named plaintiffs are typical of those of the class and that the named plaintiffs will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(3) and (4). Once certified, a Rule 23 class action includes any member of the class who does not opt out.

In contrast, because neither the FLSA nor its accompanying regulations define the term "similarly situated," courts have adopted a two-step approach for determining whether to certify an FLSA collective action. *See*, *e.g.*, *Gambo v. Lucent Techs., Inc.*, No. 05 C 3701, 2005 WL 3542485 at *4 (N.D. Ill. Dec. 22, 2005) (collecting cases); *Jonites v. Exelon Corp.*, No. 05 C 4234, 2006 WL 2873198 at *2 (N.D. Ill. Oct. 4, 2006). The first step requires a plaintiff to make a "modest factual showing sufficient to demonstrate that the Plaintiff and other putative plaintiffs together were potentially victims of a common policy or plan that violated FLSA." *Gambo*, 2005 WL 3542485 at *4. The "modest factual showing" requirement is "not a stringent standard; a plaintiff need only demonstrate a factual nexus that binds potential members of a collective action together." *Id.* If the plaintiff makes that showing, the court may authorize the plaintiff to send notice to potential claimants who may opt in by filing a written consent. *Jonites*, 2006 WL 2873198 at *2. Only those who opt in are plaintiffs in the collective action: "No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). After potential plaintiffs have been given an opportunity to opt in and the parties have engaged in discovery, there is the second step in which the court "more rigorously reviews whether the representative plaintiff and the putative claimants are in fact similarly situated" to warrant the collective action procedure, and determines whether and in what form a FLSA collective action should proceed to judgment. *Gambo*, 2005 WL

3542485 at *4 (quoting *Persin v. Careerbuilder, LLC*, No. 05 C 2347, 2005 WL 3159684 at *1 (N.D. Ill. Nov. 23, 2005)). If the court decides that the claim should proceed to judgment as a collective action, the plaintiffs may be permitted to prove liability by representative testimony and evidence. *See, e.g., Reich v. So. New England Telecomms. Corp.*, 121 F.3d 58, 66-68 (2d Cir. 1997).

In a Rule 23 class action, generally there is no discovery taken of individual class members except the named plaintiffs. *Brennan v. Midwestern United Life Ins. Co.*, 450 F.2d 999, 1004-05 (7th Cir. 1971) (noting Rule 23's "general policy of permitting absent class members to remain outside the principal action" and holding that discovery may be had of absent class members in limited circumstances). In contrast, neither party here cites any FLSA collective action where discovery was limited to *only* the initiating plaintiffs. Particularly at the second step, the defendants are entitled to information about the opt-in plaintiffs, not only concerning the merits of the claim but also to discover if the proposed class is "homogenous" (either as a single class or subclasses) or is "hopelessly heterogenous." *Compare Alvarez v. City of Chicago,* 605 F.3d 445, 448, 449 (7th Cir. 2010) *with Jonites v. Exelon Corp.*, 522 F.3d 721, 726 (7th Cir. 2008). Thus, "representative" discovery in a FLSA claim is not the same as "representative" discovery in a Rule 23 class action where discovery may be limited to the named plaintiffs whom the court has already decided are representative. Some discovery of the opt-in plaintiffs is to be expected in an FLSA § 216(b) collective action. The difference of opinion among courts is about the extent of discovery. Some courts have required discovery to be served upon and responded to by each of the opt-in plaintiffs individually. *See, e.g.*, *Abubakar v. City of Solano*, No. CIV S-06-2268, 2008 WL 508911 at *1 (E.D. Cal. Feb. 22, 2008). Some have limited discovery to a "representative sample" of opt-in

8

plaintiffs. *See Smith*, 236 F.R.D. at 357-58.[7]

Although AppleIllinois initially served document requests on all the opt-in plaintiffs, there appears to have developed some agreement on representative discovery, at least for depositions. Plaintiffs acknowledge that AppleIllinois is entitled to "appropriate discovery from Named Plaintiffs and a reasonable sample of opt-in Plaintiffs." (Pls.' Mot. at 1.) AppleIllinois states that it "needs to depose a reasonable and meaningful number" of opt-in plaintiffs. (Defs.' Opp'n at 5.) The questions are: How many is a "reasonable" number of opt-in plaintiffs? How is the "sample" to be selected so that it is "meaningful"?

At a hearing, AppleIllinois' counsel suggested, "In a representative action we'll take 20 and you [plaintiffs] can present 20 and we may take 40 in total . . . ." (*Id.*, Ex. C, Tr. Nov. 5, 2009 at 15.) Plaintiffs say that they do not oppose the number sought by AppleIllinois. (Pls.' Mot. at 6.) In light of the fact that the opt-in class has diminished to slightly more than 100 persons, forty depositions seems excessive as a starting point. A total of 24 deponents would be approximately 20% of the

---

[7] Plaintiffs cite *Adkins v. Mid-America Growers, Inc.*, 141 F.R.D. 466, 469 (N.D. Ill. 1992), in which the district judge overruled the magistrate judge's recommendation that discovery be conducted on an individual basis. Although that case involved a claim under the FLSA, it is unclear whether the case proceeded under § 216(b) or under Rule 23. The opinion states that "[t]he case was eventually certified as a class action and Adkins was named class representative." *Id.* at 467. The opinion further says that the defendant deposed "each known individual plaintiff" for a total of 81 depositions. *Id.* That suggests there were "unknown plaintiffs," which would not be the case in an opt-in collective action. Also, the court analyzed the discovery issues in light of Rule 23 standards. *Id.* at 468. *See Abubakar*, 2008 WL 508911 at *2 n. 1 (distinguishing *Adkins* on the ground that *Adkins* was a Rule 23 class action and discovery was limited on that basis).
 The parties in *Adkins* later identified 16 employees from five different agreed-upon work categories to serve as representatives of the work force for purposes of testimony at the liability stage. *Adkins v. Mid-American Growers, Inc.*, No. 88 C 980, 1998 WL 67629 (N.D. Ill. Feb. 2, 1998), *aff'd in part, rev'd in part*, 167 F.3d 355 (7th Cir. 1999). Notably, in remanding, the court of appeals said that the district court might need to revisit its decision to reinstate plaintiffs who failed to appear for depositions or otherwise failed to cooperate in discovery. 167 F.3d at 360.

9

total number of opt-in plaintiffs, a reasonable number at this time. If, after completion of those 24 depositions, either party believes that discovery is needed from more opt-in plaintiffs, that party may move for permission to take additional specific discovery.

The fundamental dispute concerns how the deponents will be chosen. Plaintiffs argue that the "manner" in which AppleIllinois selects the plaintiffs to be deposed "is a thinly-veiled effort to winnow down the opt-in class in a case that is well into its fourth year." (*Id.* at 1). Plaintiffs accuse AppleIllinois of harassing and burdening the class members in order to "weed out" opt-in plaintiffs (*id.* at 6), but then acknowledge that AppleIllinois' "methodology" is "'randomly' selecting opt-in Plaintiffs . . . demonstrat[ing] that it is not targeting any particular plaintiff for any particular purpose, but is rather taking a 'scattershot' approach to noticing depositions." (*Id.*)

Generally, in civil litigation, the parties are free to select the witnesses they want to depose, although, under Fed. R. Civ. P. 26(c)(1), the court may, for good cause, enter an order to protect a party from annoyance, embarrassment, oppression or undue burden or expense. Plaintiffs have not demonstrated that AppleIllinois' process of selecting opt-in plaintiffs "randomly" for deposition is unduly harassing or in bad faith. Indeed, in some of the cases cited by plaintiffs, the representative discovery was taken of a "randomly select[ed]" sample of the class members. *See, e.g., Lusardi v. Lechner*, 855 F.2d 1062, 1065 (3d Cir. 1988).

Plaintiffs are concerned about AppleIllinois' ability "to unilaterally select deponents." (Pls.' Resp. at 5.) They point to cases such as *Smith*, 236 F.R.D. at 357-58, in which the court directed the parties to create a statistically significant and representative sample of the opt-in plaintiffs for purposes of discovery. Notably, in *Smith*, the court rejected the plaintiffs' proposed plan for sampling the class as failing to address the defendants' concerns. *Id*.

Here, plaintiffs do not suggest a specific plan for obtaining a meaningful and representative sample, other than having the parties jointly prepare a list of plaintiffs for deposition. (Pls.' Resp. at 4.) They do not suggest how that can be done. A "jointly prepare[d] list," of course, cannot consist solely of deponents selected by plaintiffs' counsel.

Looking at solutions adopted by other courts, there appear to be two ways to establish representative discovery. The first is to design and implement a method for selecting deponents based on objective, statistically valid and reliable criteria that would favor neither plaintiffs nor AppleIllinois. Neither party here has proposed such a method, and the time it would take to design such a plan would only further delay completing discovery and the ultimate resolution of this case.

The other way is to allow the parties each to select a number of deponents. *See, e.g., Falcon v. Starbucks*, 580 F. Supp. 2d 528, 529-30 (S.D. Tex. 2008) (18 of 372 opt-ins were deposed, of which 10 were chosen by defendants, eight were chosen by plaintiff; 17 opt-in plaintiffs were dismissed for failure to participate in discovery). That will be ordered here. Plaintiffs and AppleIllinois will each choose 12 deponents, with the party designating the witness to bear the cost of the court reporter (subject to possible reallocation after judgment). Because AppleIllinois has already chosen and deposed six opt-in plaintiffs, it shall select six more. That will minimize plaintiffs' concern that there will be an unfair winnowing of the class in an effort to get AppleIllinois' 20 deponents.

The next question is: What happens if the deponents selected by AppleIllinois fail to appear? The result cannot be that AppleIllinois forfeits its right to take 12 depositions, leaving only the deponents selected by the plaintiffs. AppleIllinois will be permitted to designate opt-in plaintiffs for deposition until it has succeeded in obtaining 12 depositions.

That leads to AppleIllinois' motions to dismiss 26 plaintiffs who failed to appear for previously-noticed depositions. They were ordered to sit for depositions by specific dates and they did not obey those orders. Dismissal is an available remedy for the failure to comply with an order compelling discovery, as well as for a party's failure to attend its own deposition. Fed. R. Civ. P. 37(b)(2), 37(d)(1); *see also Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009). Except for the opt-in plaintiff who has been on military duty, plaintiffs do not explain why the remaining opt-in plaintiffs failed to appear, other than noting that plaintiffs' counsel has been unable to locate some of them. (Tr. Nov. 5, 2009 at 12.) Plaintiffs' attorneys do not explain, how, if they are unable to locate those plaintiffs, they would be able to distribute any money awarded to them if plaintiffs are successful in this case. (*See id.*) Although plaintiffs argue that the inability of AppleIllinois to take the deposition of any particular opt-in plaintiff is not prejudicial, in fact, so far AppleIllinois has been able to depose only six opt-in plaintiffs from the dozens of depositions it has noticed.

Plaintiffs argue that dismissal with prejudice, which is what AppleIllinois seeks, is too severe. Dismissal with prejudice is a "severe" and "draconian" sanction, which may be applied as a discovery sanction if there is a "finding of willfulness, bad faith or fault," and the court considers but rejects lesser sanctions. *Maynard v. Nygren*, 332 F.3d 462, 467-68 (7th Cir. 2003). The 26 opt-in plaintiffs who failed to appear for their depositions after being ordered to do so demonstrated fault justifying sanctions under Rule 37(b), but there are mitigating circumstances here. As described above, this case has been pending for more than three years, including a year-long hiatus while the parties tried unsuccessfully to achieve a settlement by mediation. It is not surprising that some of the opt-in plaintiffs may be difficult to reach after that length of time. Also, at least three of those 26 plaintiffs responded to the written discovery request, indicating their continued interest in

participating in the lawsuit.

There are lesser sanctions available and appropriate here, especially in light of the fact that no discovery cut-off date has been set. Those 23 opt-in plaintiffs who both failed to respond to written discovery and failed to appear for their depositions as required by the orders of November 5, 2009 and February 4, 2010 will be dismissed without prejudice with leave to move to reinstate no later than 14 days before the close of fact discovery upon a showing that they are available within that time to respond to discovery and sit for their depositions.[8] *See Vennet v. Am. Intercontinental Univ. Online*, No. 05 C 4889, 2007 WL 4442321 at *7 (N.D. Ill. Dec. 13, 2007) (stating that dismissal without prejudice "allows this case to proceed without plaintiffs who so far have shown only a minimal interest in pursuing their claims. If such plaintiffs appear for their depositions sufficiently prior to the close of discovery, they may move to reinstate their claims." (footnote omitted)). Those dismissed plaintiffs who move to reinstate must make themselves available to be deposed even if AppleIllinois already has taken its 12 allotted depositions.

AppleIllinois' motion is denied without prejudice as to the three plaintiffs (Rebecca Brend, William J. Pylypi, Jr., Sidney J. Smith, Jr.) who responded to written discovery but failed to appear for their depositions. Because they have expressed continued interest in pursuing the litigation, they will be given an additional opportunity to sit for their depositions at a mutually agreed date no later than 21 days after this order. If they fail to appear within that time, AppleIllinois may renew the motion to dismiss them.

---

[8] Those plaintiffs are Adan Jimenez, Derrick Johnson, Walter Luna, Carlos Negron, Bautista Nicanor, Sendy Ojeda, Nick E. Peters,, Terrance Tolbert, Taveras D. Tyus, Matthew Willis, Sharita Wilson. Armando Baeza-Garcia, Juana Barragan, Judy Arnold Daniels, Edward Gambrell, Julia Hampton, Deon Hillard, Antoine Kimbrough, Qwion Mooney, Berenice Nevarez, Fernando Sosa, James Stringfellow, and Antonio Tochimani.

The motion is denied as to Brooke Engberg, who was unavailable for deposition because of military duty. Plaintiffs' counsel shall notify AppleIllinois' counsel when Brooke Engberg is available for deposition.

No later than 14 days following this order, plaintiffs shall identify 12 opt-in plaintiffs, and AppleIllinois shall identify six additional opt-in plaintiffs, to respond to discovery and sit for deposition. AppleIllinois may select six from the most recently noticed list, Brooke Engberg, or any other opt-in plaintiff. Following the exchange of lists, counsel for the parties shall meet to arrange a mutually agreed schedule for those depositions. As noted above, each party shall bear the cost of the court reporter for the depositions of its designees, subject to reallocation at the conclusion of the case. If any opt-in plaintiff so designated by either side fails to serve responses to written discovery or fails to appear for the scheduled deposition, either party may move for an order pursuant to Rule 37(a)(3)(B) to compel appearance or response. An opt-in plaintiff who fails to comply with such an order risks the sanctions set out in Rule 37(b).

If, at the conclusion of the deposition process ordered above, either party believes that additional discovery from the opt-in plaintiffs is necessary, that party may move for permission to take specific additional discovery.

**CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss Fourteen (14) Opt-In Plaintiffs [dkt 203], Defendants' Motion to Dismiss Twelve (12) Additional Opt-in Plaintiffs [dkt 225] and Plaintiffs' Motion for A Protective Order From Defendant AppleIllinois, LLC's Notices of Deposition [dkt 231] are granted in part and denied in part, as set out in this order.

IT IS SO ORDERED.

_____
GERALDINE SOAT BROWN
United States Magistrate Judge


DATED: August 3, 2010